Robert Lee, Esq. (SBN # 289742)
WORLDWIDE CROSSING LAW GROUP, P.C.
3435 Wilshire Blvd., Suite 2480
Los Angeles, CA 90010
Tel: 213-384-3841
Email: Robert@wwclawgroup.com

Additional Counsel on Signature Page

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TAE YOUN SHIM, HUA XUE, and JI TAEK KIM, <br><br> Plaintiffs, <br><br> vs. <br><br> MARTIN J. LAWLER, and LAWLER & LAWLER, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR LEGAL MALPRACTICE, DAMAGES AND RESTITUTION** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Tae Youn Shim, Hua Xue and Ji Taek Kim, by their undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by their counsel, which included, *inter alia*: (a) review and analysis of relevant filings issued by Defendants and non-parties SMS Investment Group, LLC, AltE, LLC,[1] Green Detroit Regional Center, and the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of the marketing materials utilized by Defendants in connection with the marketing and sales of the securities marketed and sold to Plaintiffs by, through, and with the assistance of, Defendants; and (c) interviews of witnesses with personal knowledge of the relevant facts.

---

[1] AltE, LLC is now known as AltE Powertrain Technologies, Inc.

1
**COMPLAINT**

Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Additional facts supporting the allegations contained herein are known only to defendant or are exclusively within its control and the control of the other entities that Defendants' aided and abetted in, among other things, breaching their fiduciary duties owed to Plaintiffs, in connection with the sale of securities.

## I.  NATURE OF THE ACTION

1.    Plaintiffs were represented as counsel by Defendants in connection with certain investments made by Plaintiffs.

2.    The Plaintiffs are all citizens and residents of foreign countries who do not speak English, who do not understand legal rules of responsibility for an attorney, and who do not understand U.S. Securities law.  Plaintiffs were targeted for the solicitation and sale of securities specifically because of their interest in immigration to the United States though the EB-5 Program.

3.    Unbeknownst to Plaintiffs, Defendants were acting as unregistered broker-dealers in connection with the services provided.  In addition, Defendants were involved in a scheme with other non-parties to distribute unregistered securities, without the utilization of broker-dealers.  As part of the scheme, Defendant directed clients toward certain securities, carried out necessary tasks to effectuate the purchase and sale of securities to the Plaintiffs, and received unlawful commissions. The unlawful conduct of Defendants' was unknown to each of the Plaintiffs – Plaintiffs who were particularly exposed to the type of misconduct of Defendants because the Plaintiffs are all citizens and residents of foreign countries who do not speak English, and were targeted for the solicitation and sale of securities specifically because of their status.

## II.  JURISDICTION AND VENUE

4.    This Court has diversity jurisdiction pursuant to 28.U.S.C. § 1332 in that Defendants are citizens of California and each of the Plaintiffs are citizens of a foreign state who are not domiciled in California.  Upon information and belief, defendant Lawler and Lawler is a general partnership with its principal place of business located at the address 1 Post Street, Ste

**COMPLAINT**

475, San Francisco, California 94104. Plaintiff Ms. Hua Xue, is a citizen of China, a foreign state. Plaintiffs Ms. Tae Youn Shim and Mr. Ji Taek Kim are both citizens of South Korea, a foreign state. None of the Plaintiffs are domiciled in California. Finally, the amount in controversy exceeds $75,000.00 as to each Plaintiff. In particular, each Plaintiff independently asserts damages and restitution in an amount greater than $500,000.

5.      This Court's personal jurisdiction is established by Fed. R. Civ. P. 4(k) in that Defendants subject to the jurisdiction of a court of general jurisdiction in California and Plaintiffs will serve the summons upon Defendants in the State of California, and otherwise by operation of the Cal. Code Civ. Proc. § 410.10.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant, Lawler & Lawler, resides in this District, pursuant to 28 U.S.C. § 1391(c)(2), and all Defendants reside in the State of California. Upon information and belief, Defendant Lawler also resides in this District.

## III.    PARTIES

7.      Plaintiff Tae Youn Shim was at all relevant times, and is, a citizen of South Korea. In accordance with the EB-5 program detailed herein, Ms. Shim made an investment of approximately $500,000 in SMS Investment Group, LLC ("SMS"), and otherwise acquired securities indirectly of AltE, LLC. ("AltE") in connection with such investment. Defendants served as counsel to Ms. Xue in connection with, and in effecting, her purchase of securities pursuant to the EB-5 program detailed herein.

8.      Plaintiff Hua Xue was at all relevant times, and is, a citizen of China. Defendants served as counsel to Ms. Xue in connection with, and in effecting, her purchase of securities pursuant to the EB-5 program detailed herein. Ms. Xue made an investment of approximately $500,000 in SMS, and otherwise acquired securities in AltE in connection with such investment. Defendants served as counsel to Ms. Xue in connection with her purchase of securities pursuant to the EB-5 program detailed herein.

9.      Plaintiff Ji Taek Kim was at all relevant times, and is, a citizen of South Korea. Defendants served as counsel to Mr. Kim in connection with, and in effecting, Plaintiff Kim's

**COMPLAINT**

direct purchase of approximately $500,000 of securities in AltE, as well as Plaintiff Kim's unauthorized transfer into an SMS limited partnership pursuant to the EB-5 program detailed herein.

10.     Defendant Martin J. Lawler is a natural person residing in the State of California. At all relevant times, Defendant Lawler was admitted, and registered, to practice law in the State of California.  At all relevant times, Defendant Lawler acted as both an attorney and a broker-dealer in connection with the sale of securities to Plaintiffs, although he was not properly registered to act as a broker-dealer with either the State of California or the appropriate United States Regulatory bodies, including the United Securities and Exchange Commission, and the self-regulatory organization, Financial Industry Regulatory Authority, Inc. (FINRA).

11.     Defendant Lawler and Lawler is, upon information and belief, a general partnership with its principal place of business located at the address 1 Post Street, Ste 475, San Francisco, California 94104. At all relevant times, Lawler and Lawler was a law firm partnership that marketed and provided legal services within, and beyond, the State of California, by, and through, Martin J. Lawler.  At all relevant times, Lawler and Lawler further acted as a broker-dealer in connection with the sale of securities to Plaintiffs, although it was not properly registered to act as a broker-dealer with either the State of California or the appropriate United States Regulatory bodies, including the United Securities and Exchange Commission, and the self-regulatory organization, Financial Industry Regulatory Authority, Inc. (FINRA).

## IV.     FACTUAL ALLEGATIONS

### EB-5 Program

12.     The Immigrant Investor Program, known as the EB-5 Program, is administered by the United States Citizenship and Immigration Services ("USCIS").  This program allows foreign entrepreneurs to invest a requisite amount of either (a) $1,000,000 USD; or (b) a reduced amount of at least $500,000 USD, provided that the investment is made in a Targeted Employment Area. A Targeted Employment Area ("TEA") is a "high unemployment" or "rural area" in a new commercial enterprises whereby the EB-5 investment is used to create or preserve at least 10 full-time jobs, directly or indirectly depending on EB-5 category, for qualified U.S.

**COMPLAINT**

workers.  The foreign investor will file an I-526 petition to gain conditional permanent residence valid for two years.  Within the 90-day period before the conditional permanent residence expires, the foreign investor must submit and I-829 petition to demonstrate the entire required investment has been made and that 10 full-time jobs have been maintained, or 10 jobs have been created or will be created within a reasonable time period.  If conditions are met, the foreign national will have the conditions removed and will receive a permanent green card.

13.    There are two distinct EB-5 pathways for an immigrant investor to gain lawful permanent residence for themselves and their immediate family—to directly invest in a commercial enterprise and the Regional Center Pilot Program.  Under this category a foreign investor will directly invest into a new commercial enterprise.  A commercial enterprise is defined as any for-profit organization.  The investment can either be into a new commercial enterprise, for expansion of an already existing commercial enterprise, or to save a troubled business.  The investor will have an active role in the management of the business.  The new commercial enterprise will have to make 10 full-time jobs for each EB-5 investor to meet the conditions of this program.

14.    A Regional Center is a USCIS approved third party entity, which assumes the responsibility of managing overall compliance, organizing projects, facilitating information to the investors, and monitoring the requisite requirements for each foreign investor in their project. When making an investment in a new commercial enterprise affiliated with a Regional Center, an immigrant investor may satisfy the job creation requirements of the program through the creation of either direct or indirect jobs. Notably, an immigrant investing in a new commercial enterprise under the direct investment category may only satisfy the job creation requirements through the creation of direct jobs.  When an investor invests into a Regional Center Project the investor is generally a limited partner in a project and the Regional Center or other business entity is the managing general partner.  The Courts have ruled that these types of investments and transactions constitute the purchase and sale of  a "Security" as defined by The Securities Exchange Act and other Federal Laws.

**COMPLAINT**

**The EB-5 Investment**

15.     SMS Investment Group, LLC ("SMS"), is an investment pool that was established by non-parties to invest in a particular Job Creating Entity selected by Green Detroit Regional Center, the entity that participated in overseeing the entirety of the investment.   SMS was established as an LLC but operated as a partnership through an Operating Agreement and a Partnership Agreement. The SMS partnerships were unregistered securities under United States' securities laws.

16.     SMS was established to transfer the investors' funds into AltE, LLC ("AltE"), the particular job creating enterprise, a purported developer and manufacturer of hybrid and electric vehicle powertrains. In return for the transfer of the investment funds into AltE, SMS would receive, and hold, shares of AltE.

17.     Both Plaintiffs Shim and Kim learned of the SMS and AltE investment as a result of solicitations and communications with a South Korean immigration sub-agency, Hanmaum Immigration Corp.  The sub-agency is overseen by a master agency who works directly with the U.S. entities and promoters of the unregistered securities.  In this instance, the master agent was Kukje Immigration Development Corp whom were all working with the Defendants.

18.     Plaintiff Kim initially made a direct investment into AltE on or about August 16, 2010, with a total investment amount of $530,000.  However, prior to August 23, 2010, Plaintiff Kim's ownership interest was transferred into SMS, and Mr. Kim became a partner in SMS.

19.     On July 10th, 2010, Ms. Shim transferred a total investment amount $530,000 in SMS to be invested into AltE as the job creating company pursuant to the EB-5 program

20.     On or about December 10, Plaintiff Xue transferred a total investment amount of over $500,000 into SMS, with $500,000 to be invested into AltE as the job creating company pursuant to the EB-5 program.  Platintiff Xue initially learned of the investment through y unregistered brokers-dealers that were part of the unlawful scheme to sell unregistered securities through unregistered broker-dealers, of which Defendants were also participants in.

**COMPLAINT**

21.     Ultimately, Plaintiffs each became limited partners of SMS, each with a five-percent partnership interest.  SMS, in turn, held equity securities of AltE. And, at all relevant times, the Plaintiffs were limited partners in SMS.

**Defendant as Exclusive Attorney**

22.     Lawler and Lawler was introduced to Plaintiffs as the exclusive attorney of the above-described EB-5 project involving SMS and AltE. Defendant Martin Lawler's name appears as the exclusive attorney on the EB-5 AltE promotional brochures produced and distributed by the various unregistered entities utilized in the scheme.  Plaintiffs were, in effect, led to believe they did not have the option of hiring a different attorney to process their EB-5 petitions.

23.     At all times, Defendants knew that the Plaintiffs are all citizens and residents of foreign countries who do not speak English.

24.     Each of the Plaintiffs engaged Defendants as their counsel in connection with the EB-5 investment.

25.     In connection with the engagement, Defendants provided various services and advice to each of the Plaintiffs, and assisted in effecting the sale of the securities to Plaintiffs. This included, among other things, the completion and submission of various applications that were necessary to effectuate the sale of the SMS securities.

26.     Moreover, continuing through at least August 24, 2016, Defendants continued to serve Plaintiffs in furtherance of the completed sale of SMS securities and the SMS scheme to sale unregistered securities via unregistered broker-deals, by among other things, providing communications between the control persons of SMS, Green Detroit and AltE, and filing additional materials necessary for each of the Plaintiffs' applications for temporary and permanent residence which was a requisite to the purchase and sale of the SMS securities.

**COMPLAINT**

**Defendants Unlawful Conduct Finally Revealed by SEC Enforcement**

27.     On August 24, 2016, the United States Securities and Exchange Commission (SEC) issued an Order Instituting Cease-and-Desist Proceeding pursuant to the Securities and Exchange Act of 1934 (the "Order").[3]   The Order made findings, ordered sanctions and ordered that Defendant Lawler cease-and-desist his unlawful activities which were described therein. Notably, Defendant Lawler, in anticipation of the institution of the SEC proceedings, submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept, and which comprised the basis of the Order.

28.     It was through the Order, first discovered by Plaintiffs after August, 24, 2016, that Plaintiffs first discovered the extensive unlawful scheme that Defendant Lawler was involved in at the time of his representation of Plaintiffs, as Defendant Lawler had never disclosed the unlawful scheme, or his involvement, and had fraudulently concealed such from the Plaintiffs.  The scheme, in part, involved Defendant Lawler acting as an unregistered broker dealer while also serving as an attorney for clients, including Plaintiffs.  Defendant Lawler's conduct included not only steering clients toward certain investments, but, by and through his conduct, including but not limited to, the completion of certain EB-5 forms, also participated in effectuating the Plaintiffs' transactions in the securities.  .

29.     The Order succinctly summarizes the unlawful scheme and Defendant Lawler's involvement in said scheme, as follows:

> Respondent violated Section 15(a)(1) of the Exchange Act by acting as an unregistered broker-dealer in connection with his representation of clients who were seeking U.S. residency through the Immigrant Investor Program. Respondent, an immigration attorney, recommended that his clients participate in the Immigrant Investor Program by investing in securities offered through an EB-5 Regional Center and helped effect the purchases. In addition to receiving legal fees from his clients, Respondent received a commission from the Regional Center for each investment he facilitated.

---

[3] The Order is annexed hereto as Exhibit A.

8

**COMPLAINT**

30. The Order provides in further detail:

6. From at least June 2009 through September 2011, Respondent received commissions from one EB-5 Investment Offerer totaling $115,000.

7. Respondent performed activities necessary to effectuate the transactions in EB-5 securities, including recommending one or more EB-5 Investment Offerers to his clients; acting as a liaison between the EB-5 Investment Offerers and the investors; and assisting in the documentation of investment funds to the EB-5 Investment Offerers. Respondent received transaction-based commissions for his services from the EB-5 Investment Offerer. While some of Respondent's activities overlapped with legal services, for which he received fees, Respondent was paid transaction-based compensation for the activities which effectuated the investor's transactions in EB-5 securities.

31.     Defendant Lawler's conduct violated Section 15(a)(1) of the Securities and Exchange Act. 15 U.S.C. § 78o(a)(1).

32.     Defendant Lawler held himself out as counsel to Plaintiffs. Undisclosed to Plaintiffs was that Defendant Lawler was also acting as an unregistered broker-dealer in providing them services, steering their investments, and effectuating transactions necessary for the sale of the securities without being qualified to do so, or having registered to conduct such activities.

33.     The conduct of Defendant Lawler required that he be qualified and registered as a broker-dealer. Defendant Lawler was not qualified to serve as a broker-deal, and was not registered as a broker-dealer.

34.     In addition, Defendant Lawler's undisclosed involvement with the scheme, and independent of that, acceptance of undisclosed payments in connection with his involvement in the scheme to utilize unregistered broker-dealers to sale the unregistered securities, precluded Defendant Lawler from fulfilling his fiduciary duties owed to Plaintiffs.

35.     As a result of the Defendant Lawler's representation of Plaintiffs, Plaintiffs invested in the subject securities which resulted in the total loss of each of their investment capital. Had Plaintiffs known of the scheme, Defendant Lawler's lack of qualifications to conduct the activities and services he was providing to them as counsel, his failure to have met the necessary regulatory requirements to do so, and that Defendant Lawler was receiving unlawful commissions in connection

**COMPLAINT**

with the scheme, the Plaintiffs would not have invested in the subject securities. Moreover, Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, had they known the truth regarding Defendants inadequacies and conflicts of interest.

## FIRST CAUSE OF ACTION
### (For Professional Negligence / Legal Malpractice Against All Defendants)

36.     All of the above allegations are incorporated herein, as if they were alleged in full.

37.     Defendants owed a duty of care to Plaintiffs to exercise reasonable care and to use such skill, prudence, and diligence that an attorney commonly possesses and exercises, as well as the skill, prudence, and diligence that a qualified and registered broker-dealer commonly possesses and exercises.

38.     As a direct, proximate, and substantial cause and result of Defendants' negligent conduct and the cumulative effect thereof, Plaintiffs invested in the subject securities which resulted in the total loss of the investment capital. Moreover, Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, had they known the truth regarding Defendants inadequacies and conflicts of interest.

39.     Plaintiffs have been damaged in an amount in excess of the jurisdictional limits of this Court, the exact amount of which will be proven at trial.

## SECOND CAUSE OF ACTION
### (For Breach of Fiduciary Duty Against All Defendants)

40.     All of the above allegations are incorporated herein, as if they were alleged in full.

41.      A fiduciary duty is a duty of the highest loyalty. This includes a duty on the part of the fiduciary to take such steps as are required to protect the interests of the party to whom the fiduciary duty is owed. At all times herein, Defendant attorneys, and each of them, owed a fiduciary duty to each of the Plaintiffs in that each Plaintiff had reasonably reposed his trust and confidence in the fidelity and integrity of Defendants. However, Defendants did not take reasonable steps to protect the interests of Plaintiffs to whom they owed a fiduciary duty.

**COMPLAINT**

42.     Plaintiffs were particularly exposed to the type of misconduct, and breaches of fiduciary duty, of Defendants because the Plaintiffs are all citizens and residents of foreign countries who do not speak English.

43.     Defendant attorneys, and each of them, breached their fiduciary duty to Plaintiffs by failing to protect each of their financial interests, as it relates to the subject securities and for which they were hired, by concealing and/or failing to disclose material information relevant to Plaintiffs' matters, and by engaging in affirmative conduct detrimental and harmful to the Plaintiffs as set forth hereinabove. Defendants breached their duty of care to Plaintiffs by, among other actions and inactions, failing to advise Plaintiffs that Defendants were not qualified to serve as, or registered as, a lawfully registered broker-dealer; failing to disclose that Defendants had a conflict-of-interest with the Plaintiffs as Defendants were benefitted through an undisclosed commissions from the operator of the investment scheme; and failing to disclose that Defendants were unable to provide Plaintiffs the loyalty required of an attorney toward his/her client because Defendants were engaged in catering to the operator of the investment scheme at the expense of its clients, including Plaintiffs.

44.     Plaintiffs retained Defendants based on, among other things, the referral of non-party Ahn & Associates, and its agents, as well as the subsequent representations that Plaintiffs could place each of their trust and confidence in Defendants to properly and diligently represent and advise Plaintiffs in this matter and to act with the utmost good faith toward each of the Plaintiffs, always placing each of the Plaintiffs' interests first. Further, since Defendants were aware that each of the Plaintiffs were located outside of the United States and either could not understand English or had a very limited ability in doing so, Defendants knew that each of the Plaintiffs would be less inclined to question Defendants motivation in undertaking his representation in the matter, or Defendants' competency and qualifications in doing so. Nonetheless, Defendants undertook the representation, and further served in the capacity as a broker-dealer, with full knowledge that Defendants had absolutely no expertise, experience, or qualifications to do so, and could not provide such services lawfully.

45.     Defendants accepted each of the Plaintiffs' trust and confidence and thereby established a fiduciary relationship with Plaintiffs requiring Defendants to act with the utmost good

**COMPLAINT**

faith toward each of the Plaintiffs and not to take advantage of the Plaintiffs or violate his/her trust and confidence.

46.     Defendants breached their fiduciary duty to Plaintiffs by, among other things, the actions and inactions set forth herein including failing to use reasonable care and failing to place Plaintiffs interests above Defendants' own interests.

47.     As a direct, proximate, and substantial cause and result of Defendants' breach of fiduciary duty, Plaintiffs were not afforded the proper representation they were led to believe they were being provided, and were deprived of the services that were afforded them by the law. Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, and further purchased the subject securities resulting in the loss of their entire investment. Plaintiffs were deprived of the value that was otherwise afforded to them under the law governing the qualifications and registration of broker-dealers. Had they been provided services to them that they were entitled to receive, under the law, they would either have not retained Defendants, would have done so at a lower rate, and also would not have purchased the subject securities.

48.     Defendants' conduct as alleged herein was fraudulent, willful, malicious, undertaken in bad faith with the intent to vex and injure Plaintiffs, and was conducted in conscious disregard of Plaintiffs' rights such that it constitutes fraud, oppression or malice, and constructive fraud under *California Civil Code* § 3294, thereby justifying an award of punitive damages against Defendants.

### THIRD CAUSE OF ACTION
**(For Fraud and Deceit against all Defendants)**

49.     All of the above allegations are incorporated herein, as if they were alleged in full.

50.     Defendants falsely represented to Plaintiffs, and intentionally failed to disclose, among other material facts, that Defendants had sufficient expertise and qualifications to represent Plaintiffs in the matter related to the purchase of the subject securities, that Defendants were operating unlawfully as an unregistered broker-dealer, and that Defendants were engaged in a common scheme with other non-parties to sale the subject securities, as well as other securities. These facts were concealed and hidden from Plaintiffs with the intent to mislead and deceive

**COMPLAINT**

Plaintiffs and to cause him to place his trust and confidence in Defendant Lawler so that Plaintiff would retain Defendant Lawler, which inured to Defendants' benefit.

51.     Defendants' representations to Plaintiffs were false, and their omissions material, and Defendants knew the representations were false, that Defendants had knowingly omitted material information about their insufficient qualifications to serve as a broker-dealer in connection with the subject securities, or the representations and omissions were made recklessly and without regard for the truth. Defendants' representations and omissions were made with the intent to deceive Plaintiffs into retaining Defendant Lawler, to cover up his   lack of expertise and qualifications, and to maximize Defendants' fees.

52.     Plaintiffs reasonably relied on these false representations and omissions, and based thereon, Plaintiffs retained Defendant Lawler to represent each of them in connection with the purchase of the subject securities. Plaintiffs would not have done so had each of them known that Defendants lacked sufficient expertise and qualification to represent each of them in this matter.

53.     As a direct, proximate, and substantial cause and result of Defendants' breach of fiduciary duty, Plaintiffs were not afforded the proper representation they were led to believe they were being provided, and were deprived of the services that were afforded them by the law. Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, and further purchased the subject securities resulting in the loss of their entire investment. Plaintiffs were deprived of the value that was otherwise afforded to them under the law governing the qualifications and registration of broker-dealers. Had they been provided services to them that they were entitled to receive, under the law, they would either have not retained Defendants, would have done so at a lower rate, and also would not have purchased the subject securities.

54.     In lying to and misleading Plaintiffs, Defendants' actions were done with the malicious intent to harm Plaaintiffs with the knowledge that by so acting they were likely to cause harm to Plaintiffs. Defendants acted with actual malice or gross negligence constituting a willful, wanton, and reckless disregard of Plaintiff's rights. Accordingly, Plaintiffs are entitled to an award of

**COMPLAINT**

punitive and exemplary damages in a suitable amount to punish Defendants and to deter them from such conduct in the future.

## FOURTH CAUSE OF ACTION
### (For Fraudulent Concealment against all Defendants)

55.     All of the above allegations are incorporated herein, as if they were alleged in full.

56.     Defendants fraudulently concealed and intentionally failed to disclose to Plaintiffs certain material facts, including but not limited to that Defendants lacked sufficient expertise and qualifications to represent Plaintiffs in this matter, and that they were operating unlawfully as an unregistered broker-dealer.. These facts were concealed and hidden from Plaintiffs with the intent to mislead and deceive Plaintiffs and to cause him to place his trust and confidence in Defendant Lawler so that Plaintiff would retain Defendant Lawler, which inured to Defendants' benefit.

57.     Defendants had a fiduciary relationship with Plaintiffs and Defendants had a duty to disclose these facts to Plaintiffs, which were known to Defendants but were unknown to Plaintiffs and could not have been discovered by Plaintiffs through reasonable diligence.

58.     By fraudulently concealing and intentionally failing to disclose these facts to Plaintiffs, Defendants intended to deceive Plaintiffs and to induce Plaintiffs to retain Defendant Lawler to Defendants' benefit and to each of the Plaintiffs' detriment. Each of the Plaintiffs reasonably relied on Defendants' fraudulent concealment and intentional failure to disclose these facts.

59.     As a direct, proximate, and substantial cause and result of Defendants' fraudulent concealment, Plaintiffs were not afforded the proper representation they were led to believe they were provided, and were deprived of the services that were afforded them by the law.  Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, and further purchased the subject securities resulting in the loss of their entire investment. Plaintiffs were deprived of the value that was otherwise afforded to them under the law governing the qualifications and registration of broker-dealers. Had they been provided services to them that they were entitled to receive, under the law, they would either have not retained Defendants, would have done so at a lower rate, and also would not have purchased the subject securities.

**COMPLAINT**

60.     Defendants' actions in concealing these material facts from Plaintiffs was done with malicious intent to harm Plaintiffs, and with knowledge that by so acting they were likely to cause harm to Plaintiffs. Defendants acted with actual malice or gross negligence constituting a willful, wanton, and reckless disregard of each of the Plaintiffs' rights. Accordingly, Plaintiffs are each entitled to an award of punitive and exemplary damages in a suitable amount to punish Defendants and to deter them from such conduct in the future.

## FIFTH CAUSE OF ACTION
### (For Negligent Misrepresentation Against All Defendants)

61.     All of the above allegations are incorporated herein, as if they were alleged in full.

62.     Defendants represented to Plaintiffs that they had sufficient expertise and qualifications to represent the Plaintiffs in connection with the securities transactions subject herein. But, Defendants representations were false, and Defendants did not have a reasonable basis for believing such representations to be true. Defendants omitted the material information that Defendants were not qualified in assisting Plaintiffs in connection with the securities transaction subject herein, as Defendants were not registered as broker-dealers as required under the law, and lacked the necessary skills to conduct themselves as a registered broker-dealer otherwise would.

63.     Defendants made these representations, and suppressed material facts, with the intent to induce Plaintiffs to rely on them in retaining Defendants and purchasing the subject securities.

64.     Plaintiffs reasonably relied upon these misrepresentations, and forewent consideration of the material omissions, in making their decisions to retain Defendants as well as make the investments and securities purchase. Said reliance was reasonable, given Defendants' clout as an attorney admitted to practice law, and generally good reputation.  As a direct, proximate, and substantial cause and result of Defendants' misrepresentations and omissions, Plaintiffs retained Defendants at rates higher than they otherwise would have, had they retained Defendants at all, and further purchased the subject securities resulting in the loss of their entire investment. Plaintiffs were deprived of the value that was otherwise afforded to them under the law governing the qualifications and registration of broker-dealers. Had they been provided services to them that they were entitled to receive, under the law, they would either have not retained

15

**COMPLAINT**

Defendants, would have done so at a lower rate, and also would not have purchased the subject securities.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

65.     All of the above allegations are incorporated herein, as if they were alleged in full.

66.     As set forth above, Defendants made false representations, and omitted material facts, in connection with their representation of Plaintiffs in order to in order to induce each of them to retain Defendants and make investments in the subject securities.

67.     Plaintiffs did retain Defendants, and made investments in the subject securities in reliance upon Defendants misrepresentations and omissions.

68.     Plaintiffs did not receive all of the benefits they were entitled to in connection with Defendants' representation, yet Defendants were able to obtain payments for the retention as well as commissions for the sale of the subject securities.

69.     It would be inequitable for Defendants to retain the excess profit it obtained from its deceptive and unlawful conduct.

70.     Accordingly, Plaintiffs should be awarded restitution in the amount by which Defendants have been unjustly enriched, including, without limitation, all profits obtained by Defendants from its unlawful conduct.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for relief and judgment pursuant to the claims as follows:

    a.   Awarding actual and compensatory damages in favor of Plaintiffs against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    b.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its unlawful activities, together with interest thereon from the date of payment, to the victims of such violations;

    c.   Awarding punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar misconduct in the future;

**COMPLAINT**

d.  Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees, and expert fees;

e.  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 24, 2017                    Respectfully submitted,


**WORLDWIDE CROSSING LAW GROUP, P.C.**


By: ___/s   Robert Lee_____
Robert Lee, Esq. (SBN # 289742)

3435 Wilshire Blvd., Suite 2480
Los Angeles, CA 90010
Tel: (213) 384-3841
Email: robert@wwclawgroup.com


-and-


The Hinton Law Firm
Christopher S. Hinton, Esq.
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (646) 723-3377
Facsimile: (212) 202-3827
Email: chinton@hintonlegal.com
(pending *pro hac vice*)

Attorneys for Plaintiffs

17
**COMPLAINT**

Exhibit A

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 78658 / August 24, 2016**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-17420**

| | |
|---|---|
| In the Matter of<br><br>     MARTIN J. LAWLER<br><br>Respondent. | **ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against Martin J. Lawler ("Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over him and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings, Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

---

[1]     The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

### Summary

1.      Respondent violated Section 15(a)(1) of the Exchange Act by acting as an unregistered broker-dealer in connection with his representation of clients who were seeking U.S. residency through the Immigrant Investor Program.  Respondent, an immigration attorney, recommended that his clients participate in the Immigrant Investor Program by investing in securities offered through an EB-5 Regional Center and helped effect the purchases.  In addition to receiving legal fees from his clients, Respondent received a commission from the Regional Center for each investment he facilitated.

### Respondent

2.      Martin J. Lawler, age 64, is a resident of San Francisco, California.  He is a licensed attorney specializing in immigration.  During the relevant time period, he was a partner of a law firm located in San Francisco, California.

### Background

3.      The United States Congress created the Immigrant Investor Program, also known as "EB-5," in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors.  The Program offers EB-5 visas to individuals who invest $1 million in a new commercial enterprise that creates or preserves at least 10 full-time jobs for qualifying U.S. workers (or $500,000 in an enterprise located in a rural area or an area of high unemployment).  A certain number of EB-5 visas are set aside for investors in approved Regional Centers.  A Regional Center is defined as "any economic unit, public or private, which is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment."  8 C.F.R. § 204.6(e) (2015).

4.      Typical Regional Center investment vehicles are offered as limited partnership interests.  The partnership interests are securities, usually offered pursuant to one or more exemptions from the registration requirements of the U.S. securities laws.  The Regional Centers are often managed by a person or entity which acts as a general partner of the limited partnership. The Regional Centers, the investment vehicles, and the managers are collectively referred to herein as "EB-5 Investment Offerers."

5.      Various EB-5 Investment Offerers paid commissions to anyone who successfully facilitated the sale of limited partnership interests to new investors.

### Respondent Received Commissions for His Clients' EB-5 Investments

6.      From at least June 2009 through September 2011, Respondent received commissions from one EB-5 Investment Offerer totaling $115,000.

7.      Respondent performed activities necessary to effectuate the transactions in EB-5 securities, including recommending one or more EB-5 Investment Offerers to his clients; acting as

a liaison between the EB-5 Investment Offerers and the investors; and assisting in the documentation of investment funds to the EB-5 Investment Offerers.  Respondent received transaction-based commissions for his services from the EB-5 Investment Offerer.  While some of Respondent's activities overlapped with legal services, for which he received fees, Respondent was paid transaction-based compensation for the activities which effectuated the investor's transactions in EB-5 securities.

8.     As a result of the conduct described above, Respondent violated Section 15(a)(1) of the Exchange Act which makes it unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer to make use of the mails or any means or instrumentality of interstate commerce "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless such broker or dealer is registered in accordance with Section 15(b) of the Exchange Act.

## IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent Martin J. Lawler's Offer.

Accordingly, pursuant to Section 21C of the Exchange Act, it is hereby ORDERED that:

A.     Respondent shall cease and desist from committing or causing any violations and any future violations of Section 15(a)(1) of the Exchange Act.

B.     Respondent shall pay disgorgement of $115,000 and prejudgment interest of $25,997, to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury in accordance with Exchange Act Section 21F(g)(3).  Payment shall be made in the following installments: (1) 50% of the total amount within ten (10) days of the entry of this Order, (2) 25% of the total amount within ninety (90) days of the entry of this Order, and (3) 25% of the total amount within one-hundred-eighty (180) days of the entry of this Order.  If any payment is not made by the date the payment is required by this Order, the entire outstanding balance of disgorgement and prejudgment interest, plus any additional interest accrued pursuant to SEC Rule of Practice 600, shall be due and payable immediately, without further application.

Payment must be made in one of the following ways:

(1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Martin J. Lawler as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Stephanie Avakian, Deputy Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549-5553.

### V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the findings in this Order are true and admitted by Respondent, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).


By the Commission.


Brent J. Fields
Secretary

4